UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RAYMOND WARREN, JR., et al., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:09CV1330 JCH |
| ) | |
| CITY OF WENTZVILLE, et al., ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss and for Summary Judgment, filed July 9, 2010. (Doc. No. 25). The motion is fully briefed and ready for disposition.

**I.   BACKGROUND**

Plaintiff Gerri Warren, the owner and managing officer of Olde Towne Pub ("OTP") in Wentzville, Missouri, is married to Plaintiff Raymond Warren ("Warren"). (Wentzville Defendants' Statement of Uncontroverted Material Facts ("Defendants' Facts")[1], ¶¶ 1, 2, 4). OTP opened for business on June 1, 2005, in a building owned by Plaintiffs since 2003. (Id., ¶¶ 5, 6). Defendant Paul Lambi ("Lambi"), the Mayor of Defendant City of Wentzville, has been a customer of OTP from the time it opened in 2005. (Id., ¶ 11).

Sometime in 2006, Gerri Warren met with Lambi at OTP, and informed him Plaintiffs were

---

[1] In support of their Motion for Summary Judgment, Defendants submitted a Statement of Uncontroverted Material Facts, listing two-hundred two uncontroverted facts with citations to the record. (Doc. No. 27). Plaintiffs did not respond to Defendants' Facts, nor did they provide the Court with a statement of material facts to which they contend a genuine dispute exists. See Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999) ("Plaintiffs' mere allegations that issues remain in dispute are insufficient to meet the requirements of Local Rule 4.01(E)"). Plaintiffs thus have not met their burden under Local Rule 4.01(E), and they are deemed to have admitted Defendants' Uncontroverted Material Facts in their entirety. Turner v. Shinseki, 2010 WL 2555114 at *2 (E.D. Mo. Jun. 22, 2010); Ridpath v. Pederson, 407 F.3d 934, 936 (8th Cir. 2005).

experiencing excessive drive-bys, and were receiving complaints from customers about extensive police activity[2] around the establishment. (Defendants' Facts, ¶¶ 11, 12). Lambi told Gerri Warren that he would contact Defendant Robert Noonan ("Noonan"), Chief of Police of the City of Wentzville, and arrange a meeting between Plaintiffs, Lambi and Noonan. (Id., ¶ 13). Plaintiffs met with Lambi and Noonan at the Wentzville Police Station in either 2006 or 2007, and inquired as to whether it was necessary to change the manner in which they ran the establishment. (Id., ¶¶ 14, 15). Noonan responded there were no problems with OTP, and that if his officers were in the area it was because they had a reason to be there. (Id., ¶¶ 16, 18).

On or about December 9, 2006, Wentzville Police Officer Richard Tienter drove by OTP after 1:30 a.m., and noticed there were people inside and what appeared to be alcoholic containers on the bar.[3] (Defendants' Facts, ¶¶ 158, 160, 161). Tienter forwarded this information to the City's prosecuting attorney, who advised Tienter to issue a citation for serving after hours. (Id., ¶ 163). Plaintiffs thereafter were cited for "Liquor Law Violation, Bar Open after Posted Hours," Municipal Ticket No. 061117719. (Compl., ¶ 15). According to Plaintiffs, the charge eventually was dismissed for lack of evidence.[4] (Id.). Tienter did not tell Noonan verbally or by memo that he was going to cite Plaintiffs for being open after hours. (Defendants' Facts, ¶ 165).

On or about June 10, 2007, Wentzville Police Sergeant John Sinopole drove by OTP at

---

[2] Gerri Warren later explained that by "excessive police activity," she meant "[n]umerous walk-throughs by the Wentzville Police Department, parking down the street with their headlights off, pulling customers over as they left Olde Towne Pub's business, [and] driving past the pub at closing every night numerous times." (Gerri Warren Dep., P. 28).

[3] No samples were taken from the containers to show there was alcohol inside. (Defendants' Facts, ¶ 162).

[4] The Court's effort to verify the details of the citations against Plaintiffs and their eventual dispositions was unsuccessful, as none of the parties submitted copies of the various violations and their corresponding police reports as exhibits.

approximately 1:37 a.m., and observed what appeared to be several patrons on the south patio consuming alcoholic beverages after the bar closing time. (Compl., ¶ 16; Defendants' Facts, ¶¶ 175, 180). Sinopole spoke with Warren, who explained it was his understanding that as long as patrons were not inside the establishment, they were permitted to consume alcohol on the patio. (Defendants' Facts, ¶ 180). Sinopole understood the relevant statute to prohibit the consumption of alcohol on or about the leased premises between the hours of 1:30 a.m. and 6:00 a.m. (Id., ¶ 181). He therefore contacted the City's prosecuting attorney, who instructed Sinopole to issue a summons. (Id., ¶ 183). Plaintiffs then were cited for "Failure to Maintain an Orderly Place," Municipal Ticket No. 061122276. (Compl., ¶ 16).

On or about March 30, 2008, Wentzville Police Officer Robert Walters was driving by OTP at approximately 1:40 a.m. checking for routine compliance, when he observed several subjects inside OTP who appeared to be consuming alcohol. (Compl., ¶ 17; Defendants' Facts, ¶¶ 71, 185). Walters called Sinopole to the scene, and the officers entered OTP through the side door. (Defendants' Facts, ¶¶ 71, 186). Although Warren maintains he informed the officers that those present were all employees of OTP, Plaintiffs were cited for "Failure to Maintain an Orderly House," Municipal Ticket No. 061127188. (Compl., ¶ 17; Defendants' Facts, ¶¶ 81, 187). The Wentzville Municipal Court found Warren guilty on the ticket. (Defendants' Facts, ¶ 82). Warren appealed from the Municipal Court conviction, however, and the St. Charles County Circuit Court eventually dismissed the case for failure of proof, as evidence of alcoholic beverages being consumed after hours mistakenly was not preserved. (Id., ¶¶ 83, 188-91; Compl., ¶ 17).[5]

---

[5] The March, 2008, citation was forwarded to Missouri Liquor Control. (Defendants' Facts, ¶ 82). According to Warren, the Liquor Control Supervisor disagreed with statements in the police report, but imposed a $50.00 fine because videotape of the incident showed a bottle containing an unidentified liquid on the bar. (Id., ¶ 86).

On November 2, 2008, Warren left OTP at 1:53 a.m., after all the employees had gone home. (Defendants' Facts, ¶ 105). Warren was headed home when he noticed a car behind him. (Id., ¶¶ 106-107). Warren could not determine that it was a police car, but thought it was because of the "police activity and presence" in the area of OTP. (Id., ¶ 108). He eventually was pulled over to the side of the road for failure to maintain a single lane.[6] (Id., ¶¶ 109, 173). Because he could smell alcohol, Wentzville Police Officer Sean Rosner asked how many drinks Warren had consumed, and informed Warren he wanted to do a "sobriety check." (Id., ¶¶ 113-114, 166, 171). Warren told the officer he could not perform the test, which involved walking nine steps forward, heel to toe, turning around, and walking nine steps back, heel to toe. (Id., ¶¶ 114-116).[7] Warren did consent to blowing into a black box, however. (Id., ¶¶ 118-119). Without informing Warren of the results of the test, Rosner arrested Warren on suspicion of driving while intoxicated. (Id., ¶¶ 120, 171). Rosner conveyed Warren to the Wentzville Police Department, where Warren submitted to a chemical test of his breath on the BACDataMaster. (Id., ¶¶ 171, 172). The results showed that Warren did not have enough alcohol in his system to be intoxicated, and he was released on a summons for the traffic violation he had committed, i.e., failure to maintain a single lane.[8] (Id., ¶ 172; Compl., ¶ 24). Warren estimates that four hours elapsed from the time he was handcuffed until he was released from custody. (Defendants' Facts, ¶ 126). Warren asserts his citation for "Failure to Maintain a Single Lane," Municipal Ticket No. 071916332, was dismissed at trial in the Wentzville Municipal Court. (Compl., ¶ 24).

---

[6] Warren does not recall crossing over the center line at any time without indicating his intention with his blinkers. (Defendants' Facts, ¶ 110).

[7] According to Warren, he was unable to perform the sobriety test because his equilibrium is off and he has a problem with balance. (Defendants' Facts, ¶ 117).

[8] Warren complains his car was impounded, and that when he retrieved the vehicle the following day, the interior was "trashed". (Compl., ¶ 24; Defendants' Facts, ¶¶ 125, 174).

According to Plaintiffs, despite their repeated entreaties to Defendant Lambi and other city and state officials[9], they continue to face harassment from the City of Wentzville police force. (Compl., ¶¶ 18-19, 21, 25). Specifically, Plaintiffs allege officers, "commonly wait outside Plaintiffs' building awaiting the departure of Plaintiffs' customers to pull them over, disturb Plaintiffs during and after business hours, perform 'walk-throughs' of the establishment harassing customers and harass Plaintiffs in their personal capacity." (Id., ¶ 25). Plaintiffs further maintain that every time Defendants charge Plaintiffs with violations of the law they alert the Missouri Division of Alcohol and Liquor Control, in an attempt to damage Plaintiffs' reputation with the State agency and have Plaintiffs' liquor license revoked. (Id., ¶ 26).[10]

Plaintiffs filed their Complaint in this matter on August 19, 2009. (Doc. No. 1). In Counts I and II, brought pursuant to 42 U.S.C. § 1983, Warren charges Defendants' conduct in connection with his November 2, 2008, arrest, constituted a violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable and unlawful seizures, and from false imprisonment. In Count IV[11], Warren charges Defendants violated Missouri common law and engaged in malicious prosecution, when they instituted criminal proceedings against Warren in relation to both the March 30, 2008, and the November 2, 2008, incidents. In Count V, brought pursuant to Section 1983, Plaintiffs allege Defendants conspired to violate their civil rights

---

[9] Plaintiffs maintain they met with Lambi on several occasions, and further addressed their concerns with then-acting City Administrator Andy McGowen, Peter Lobdell of the Missouri Division of Alcohol and Liquor Control, City Administrator Dianna Wright, and Wentzville Aldermen Nick Guccione, John Luby, and Cheryl Kross. (Compl., ¶¶ 18, 19, 21; Defendants' Facts, ¶¶ 37-45, 93-97, 151).

[10] Plaintiffs charge Defendants neglect to alert the Missouri Division of Alcohol and Liquor Control when Plaintiffs are exonerated of the charges and citations. (Compl., ¶ 26).

[11] Defendants' Motion to Dismiss Count III of Plaintiffs' Complaint was granted on December 2, 2009. (Doc. No. 14).

under the Fourth and Fourteenth Amendments, by "defaming them, interfering with business practices, attempting to cause the revocation of permits and licenses, unlawfully seizing, detaining and imprisoning Plaintiff Ray Warren, and, maliciously instituting criminal proceedings against Plaintiff Ray Warren." (Compl., ¶ 74). Count VI asserts civil conspiracy under Missouri common law. Finally, in Count VII Plaintiffs maintain Defendants tortiously interfered with their business expectancy, in violation of Missouri common law, by harassing employees and customers, and by seeking and obtaining criminal charges against Plaintiff Ray Warren.

As stated above, Defendants filed the instant Motion for Summary Judgment on July 9, 2010, asserting there exist no genuine issues of material fact and they are entitled to judgment as a matter of law. (Doc. No. 25).

## II.    LEGAL STANDARDS

### A.    Motion To Dismiss

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto. Servs., Inc., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). A motion to dismiss must be granted, however, if the Complaint does not contain, "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). While a Complaint attacked by a

Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted); Huang v. Gateway Hotel Holdings, 520 F.Supp.2d 1137, 1140 (E.D. Mo. 2007). Stated differently, to survive a motion to dismiss, the Complaint's factual allegations, "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted).

### B. Summary Judgment

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most

favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## III. DISCUSSION

### A. Counts I And II

In their Complaint, Plaintiffs allege in relevant part as follows:

> On November 2nd, 2008, Plaintiff Ray Warren was cited for "Failure to Maintain a Single Lane": Municipal Ticket No. 071916332. Plaintiff was also arrested on suspicion of driving while intoxicated. This incident occurred after Plaintiff left Olde Towne Pub at 1:55 a.m. to depart for home and was followed immediately after leaving the parking lot for several miles until being pulled over by Officer [Rosner]. Plaintiff was never charged with driving while intoxicated due to the fact that the City of Wentzville BAC Datamaster breathalyzer determined that Plaintiff was not intoxicated. Plaintiff was forced to blow into the breathalyzer device 3 times, however, was never informed of the results, despite asking. Notwithstanding Plaintiff's sobriety on the night of his arrest, Plaintiff was forced to spend a night in jail and his vehicle was impounded. Further, upon obtaining his vehicle the following day, Plaintiff found the interior of the vehicle trashed as the Officers had dumped all items from the glove box and consoles onto the seats and floorboard. It should also be noted that Plaintiff's citation for "Failure to Maintain a Single Lane" was dismissed at trial in the Wentzville Municipal Court: Ticket No. 071916332.

(Compl., ¶24). Based on the foregoing allegations, Warren asserts Defendants lacked probable cause to believe that he had engaged in criminal conduct on November 2, 2008. (Compl., ¶¶ 36, 42-43). Warren thus maintains Defendants' conduct constituted a violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable and unlawful seizures, and from false imprisonment. (Id., ¶¶ 37, 43).

#### 1. Defendants Lambi And Noonan

In their Motion for Summary Judgment, Defendants first assert Lambi and Noonan may not be held liable on Counts I and II of Plaintiffs' Complaint, because there is no evidence in the record that either individual Defendant arrested or detained Warren. (Memorandum in Support of

Defendants' Motion to Dismiss and for Summary Judgment, P. 5). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).

> Because vicarious liability is inapplicable to...§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution....As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (internal quotations and citations omitted). Warren concedes he knows of nothing Noonan or Lambi did to initiate or participate in the proceeding against him for failure to drive in a single lane. (Defendants' Facts, ¶¶ 129-130, 145-148, 157).[12] Warren further neither alleges nor provides evidence that Lambi or Noonan failed to train and/or supervise Rosner, the arresting officer. Defendants Lambi and Noonan's Motion for Summary Judgment on Counts I and II of Plaintiffs' Complaint must therefore be granted. Teague v. St. Charles County, 2010 WL 1704709 at *3 (E.D. Mo. Apr. 28, 2010).

### 2. Defendant City Of Wentzville--Municipal Liability

A municipality "can not be held liable for an injury inflicted solely by its employees or agents on a theory of respondeat superior." Jackson v. East Prairie Police Dept., 2006 WL 156717 at *2 (E.D. Mo. Jan. 20, 2006) (internal quotations and citation omitted). "Rather, a plaintiff seeking to impose such liability is required to identify either an official municipal policy or a widespread custom or practice that caused the plaintiff's injury." Id. (internal quotations and citation omitted). Such a municipal policy or custom must be shown to have been the, "moving force [behind] the constitutional violation." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (internal

---

[12] Rather, the undisputed evidence establishes that it was Rosner who arrested Warren and transported him to the Wentzville Police Department. (Defendants' Reply Memorandum, P. 3).

quotations and citations omitted).

A "policy' is "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler, 165 F.3d at 1204 (citations omitted). "A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights." Williams v. City of Beverly Hills, Mo., 2006 WL 897155 at *11 (E.D. Mo. Mar. 31, 2006) (internal quotations and citations omitted). To prove that a municipal custom exists, Plaintiff much show: 1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the City of Wentzville's employees; 2) that the City's policymaking officials were deliberately indifferent to or tacitly authorized such conduct after notice to the officials of the misconduct; and 3) that Plaintiff Raymond Warren was injured by acts pursuant to the City's custom, *i.e.*, proof that the custom was the moving force behind the constitutional violation. Mettler, 165 F.3d at 1204; Jenkins v. County of Hennepin, Minn., 557 F.3d 628, 634 (8th Cir. 2009).

In the instant case, Plaintiffs offer no evidence that Defendant City of Wentzville adopted a policy that encouraged or required Officer Rosner to arrest and detain Warren without probable cause. Plaintiffs further offer no evidence that a widespread, persistent pattern of unlawful arrests and detentions by City officers in general, or by Rosner in particular, existed[13], much less that Defendant City's officials knew of but disregarded such conduct.[14] This portion of Defendants'

---

[13] In their response, Plaintiffs assert, "[t]he issue of whether or not there is a custom or policy of the City of Wentzville leading to the unlawful detention and arrest of Mr. Warren is a disputed fact, which is obviously very material to the present matter." (Memorandum in Opposition to Defendants' Motion to Dismiss and for Summary Judgment ("Plaintiffs' Opp."), P. 2). The Court finds this contention, unsupported as it is by either explication from Plaintiffs or citations to relevant portions of the record, insufficient to defeat Defendants' Motion for Summary Judgment on Counts I and II.

[14] As noted by Defendants, although the record reflects Plaintiffs discussed the alleged "excessive police activity" at OTP with Lambi and others, there is no evidence they complained of

Motion for Summary Judgment must therefore be granted.

    **B.**    <u>**Count IV**</u>[15]

As stated above, in Count IV of the Complaint Plaintiff Warren charges Defendants violated Missouri common law and engaged in malicious prosecution, when they instituted criminal proceedings against Warren in relation to both the March 30, 2008, and the November 2, 2008, incidents. (Compl., ¶¶ 60-66). Under Missouri law, in order to prevail on his claim of malicious prosecution, Warren must prove the following elements: "(1) the previous commencement of a lawsuit against the plaintiff; (2) that was instigated by the defendant[s]; (3) that terminated in favor of the plaintiff; (4) due to a lack of probable cause for the instigation of the suit; (5) because the defendant[s'] conduct was motivated by malice; and (6) the plaintiff sustained damages as a result." <u>Diehl v. Fred Weber, Inc.</u>, 309 S.W.3d 309, 318 (Mo. App. 2010) (citations omitted).

    **1.**    <u>**Defendant City Of Wentzville**</u>

In their Motion for Summary Judgment, Defendants assert Warren's malicious prosecution claim against Defendant City of Wentzville is barred by the doctrine of sovereign immunity. (Defendants' Memo in Support, PP. 11-13).

> In Missouri, public entities enjoy the tort immunity they would have been entitled to prior to September 12, 1977, except under certain circumstances not applicable here. When the defendant is a municipality, to determine whether sovereign immunity applies, a court must determine whether the activity giving rise to the injury was an exercise of a governmental or a proprietary function.[16] A municipality is immune from liability for actions

---

a widespread, persistent pattern of unconstitutional arrests and detentions by Wentzville police officers. (Defendants' Reply Memorandum, P. 4).

[15] In their response, Plaintiffs failed to address Defendants' Motion for Summary Judgment on Count IV in even a cursory manner.

[16] "A proprietary function is an act performed for the special benefit or profit of the municipality as a corporate entity, while a governmental function is an act performed by the municipality as an agent of the state, for the common good of all." <u>Oliver</u>, 2006 WL 2505994 at *5

> arising from its governmental function, but is not immune from liability for acts arising from its proprietary function.

Oliver v. Swon, 2006 WL 2505994 at *5 (E.D. Mo. Aug. 29, 2006) (internal quotations, citations and footnote omitted).

In the instant case, the Court finds Plaintiffs' allegations in Count IV seek to hold Defendant City of Wentzville liable for the actions of its employee police officers. "These allegations relate to Defendant City's operation and maintenance of its police force, a governmental function." Oliver, 2006 WL 2505994 at *5 (citation omitted). Sovereign immunity thus applies, and Defendant City of Wentzville cannot be held liable for malicious prosecution under Missouri state law absent some exception.

Plaintiffs seek to avoid the application of sovereign immunity by asserting Defendant City of Wentzville maintains liability insurance to cover the claim of malicious prosecution on behalf of its agents and employees. (Compl., ¶ 71). A municipality may waive its immunity by purchasing insurance covering tort claims, but "the extent of that waiver is expressly dictated, and limited, by the terms of the insurance policy." Wright v. City of Salisbury, Mo., 656 F.Supp.2d 1013, 1030 (E.D. Mo. 2009) (internal quotations and citation omitted). It is undisputed that the insurance policies at issue here provide the plans do not apply to claims or lawsuits barred by the doctrines of sovereign immunity and/or official immunity. (Defendants' Facts, ¶¶ 200, 202). Therefore, Defendant City is entitled to summary judgment on Warren's claim of malicious prosecution.[17]

### 2. **Defendants Noonan And Lambi In Their Individual Capacities**

---

n. 9 (citations omitted).

[17] Warren's claim of malicious prosecution against Noonan and Lambi in their official capacities likewise is barred by sovereign immunity. See Oliver, 2006 WL 2505994 at *5 (internal quotations and citation omitted) ("Sovereign immunity, if not waived, bars suits against employees in their official capacity, as such suits are essentially direct claims against the state.").

With respect to Plaintiff Warren's malicious prosecution claim against Noonan and Lambi in their individual capacities, as noted above Warren admits he knows of nothing either Defendant did to initiate the proceeding against him for failure to drive in a single lane. (Defendants' Facts, ¶¶ 129, 130). Warren further admits Noonan did not respond to any of the incidents on the dates alleged in the Complaint, nor did he make any decisions to issue citations, arrest, detain, or prosecute Warren. (Id., ¶¶ 145-148). Finally, Warren admits no official of the City of Wentzville ever advised Lambi of an intention to file charges, issue citations or take police action pertaining to Plaintiffs. (Id., ¶ 157). Under these circumstances, the Court finds Defendants are entitled to summary judgment on Plaintiff Warren's claim of malicious prosecution against Noonan and Lambi in their individual capacities.

### C. Count V

In Count V, brought pursuant to § 1983, Plaintiffs allege Defendants conspired to violate their civil rights under the Fourth and Fourteenth Amendments, by "defaming them, interfering with business practices, attempting to cause the revocation of permits and licenses, unlawfully seizing, detaining and imprisoning Plaintiff Ray Warren, and, maliciously instituting criminal proceedings against Plaintiff Ray Warren." (Compl., ¶ 74). The Eighth Circuit has held that, "[i]n order to show a constitutional conspiracy, a party must show that two or more individuals conspired for the purpose of depriving, either directly or indirectly, a person or persons of their right to equal protection of the laws or of equal privileges and immunities under the laws...." Marti v. City of Maplewood, Mo., 57 F.3d 680, 685 (8th Cir. 1995) (citations omitted); see also Heartland Academy Community Church v. Waddle, 595 F.3d 798, 805 (8th Cir. 2010). Further, Plaintiffs must "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement" to violate Plaintiffs' civil rights. Marti, 57 F.3d at 685 (internal quotations and citations omitted). See also

Guthrie v. Franklin County, Mo., 2010 WL 3023983 at *5 (E.D. Mo. Aug. 2, 2010).

Upon consideration, the Court finds that with their conclusory allegations of conspiracy, Plaintiffs fail to satisfy the above pleading standards. Ivester v. Lee, 991 F.Supp. 1113, 1124 (E.D. Mo. 1998). The Court therefore will grant Defendants' Motion to Dismiss Plaintiffs' Section 1983 conspiracy claim.[18]

### D. Count VI

In Count VI of their Complaint, Plaintiffs utilize the same factual allegations to assert civil conspiracy under Missouri common law. (Compl., ¶ 78). In order to state a claim for civil conspiracy under Missouri law, Plaintiffs must allege as follows: "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) the plaintiff was thereby injured." Moses.com Securities, Inc. v. Comprehensive Software Systems, Inc., 406 F.3d 1052, 1063 (8th Cir. 2005) (internal quotations and citations omitted). Upon consideration, the Court finds Plaintiffs fail even to allude to a meeting of the minds in their Complaint, much less support the assertion with specific allegations of such collusion in their response to Defendants' motion.[19] Id.; see also Bootheel Ethanol Investments,

---

[18] As further support for its ruling, the Court notes that a governmental entity cannot conspire with itself through its agents. Larson v. Miller, 76 F.3d 1446, 1456 n. 6 (8th Cir. 1996). See also Meyers v. Starke, 420 F.3d 738, 742 (8th Cir. 2005); Sitzes v. City of West Memphis, Ark., 606 F.3d 461, 465 (8th Cir. 2010). While "[a]n exception arises when the agents were, at the time of the conspiracy, acting beyond the scope of their authority or for their own benefit," Barstad v. Murray County, 420 F.3d 880, 887 (8th Cir. 2005) (citation omitted), Plaintiffs make no such allegations in the instant case.

[19] Plaintiffs' response regarding their conspiracy claims states in its entirety as follows:
> Plaintiffs allege sufficient facts to put Defendants on notice of the claims against them, and Plaintiffs make specific factual allegations pertaining to the conduct that constitutes deprivation of constitutional rights. Defendants have not provided any evidence to show that it is an uncontested material fact that Defendants did not conspire to violate Plaintiffs' constitutional rights. Because both conclusions are possible but contradictory, it remains contested

L.L.C. v. Semo Ethanol Co-op, 2009 WL 398506 at *5 (E.D. Mo. Feb. 17, 2009) (internal quotations and citations omitted) ("A mere allegation of a conspiracy without specific facts demonstrating a meeting of the minds among the conspirators fails to state a claim upon which relief can be granted."). Defendants' Motion to Dismiss Count VI of Plaintiffs' Complaint must therefore be granted.[20]

### E. Count VII

As noted above, in Count VII of their Complaint Plaintiffs maintain Defendants tortiously interfered with their business expectancy, in violation of Missouri common law, by harassing employees and customers, and by seeking and obtaining criminal charges against Plaintiff Ray Warren. (Compl., ¶¶ 83-88). Under Missouri law, "[t]he elements of tortious interference with a business relationship are: (1) The plaintiff was involved in a valid business relationship; (2) the defendant[s] [were] aware of the relationship; (3) the defendant[s] intentionally interfered with the relationship, inducing its termination; (4) the defendant[s] acted without justification; and (5) the plaintiff suffered damages as a direct result of defendant[s'] conduct." Topper v. Midwest Div., Inc., 306 S.W.3d 117, 125 (Mo. App. 2010) (internal quotations and citation omitted). With respect to Defendant City of Wentzville, and Defendants Noonan and Lambi in their official capacities, the Court finds that for the reasons discussed in Section III(B)(1), supra, Plaintiffs' claim is barred by the doctrine of sovereign immunity.

---

whether or not Defendants did conspire to perform the acts alleged throughout the Complaint. Accordingly, Defendants' Motion must fail.
(Plaintiffs' Opp., P. 3).

[20] As further support for its holding, the Court notes that as with federal law, under Missouri law a corporation cannot conspire with its own employees, except under limited circumstances not alleged here. 8000 Maryland, LLC v. Huntleigh Financial Services, Inc., 292 S.W.3d 439, 452 (Mo. App. 2009).

With respect to Defendants Noonan and Lambi in their individual capacities, as with their previous claims Plaintiffs fail to present any evidence that they intentionally interfered with Plaintiffs' business relationship with their customers, or that Plaintiffs suffered damages as a direct result of these individual Defendants' conduct.[21] In the absence of such evidence, Defendants' Motion for Summary Judgment on Count VII must be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss and for Summary Judgment (Doc. No. 25) is **GRANTED**, and Plaintiffs' claims are **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this 25th day of August, 2010.

        /s/ Jean C. Hamilton
        UNITED STATES DISTRICT JUDGE

---

[21] Once again Plaintiffs' response to Defendants' motion is wholly inadequate, stating in its entirety as follows:
> Plaintiffs' Complaint alleges sufficient facts to put Defendants on notice of the claims against them which constitute tortious interference with business expectancy. Defendants have again failed to show any undisputed facts that they did not tortiously interfere with Plaintiffs' business, and thus the facts which could tend to prove or disprove those allegations remain in dispute. Accordingly, Summary Judgment is not appropriate and Defendants' Motion must be denied.

(Plaintiffs' Opp., P. 3).